Anthony Bornstein, on behalf of the petitioner, Michael Greene, on behalf of the petitioner, I'd like to save three minutes for rebuttal, if I may. Thank you. This case challenges as unconstitutional the denial of Mr. Greene's re-release onto parole in the year 2000. When this case originated, Mr. Greene was still incarcerated, and his subsequent release has given rise to the issue of mootness. Your Honors, Supreme Court precedent dictates a finding that the issue is still a live case of controversy and is not moot. Rather late in my research, but before filing the reply brief, I came across the 1981 Supreme Court decision in Jago v. Van Curren, which is on page 8 of our reply brief. I submit that that case is controlling and is on all fours as a case can be. Let me ask you about – I want to say something more about that case. Okay. Ask your Honors a question. There is a case out of the Oregon Court of Appeals called Greene v. Baldwin. Are you familiar with that case? I don't think I'm familiar with Greene v. Baldwin. All right. That is fine. Perhaps if counsel's arguments – Well, as I read it, it would conclude the other way, but it perhaps is distinguishable. In any event, it's not binding on us in any event. In that line, maybe you could answer a factual question. Maybe that's another way to get there. At some point, the Oregon Board of Parole was given the discretion to extend parole for the full term, but before then they were limited to, as I understand it, they could only – the person went automatically on to inactive parole three years after the release. Isn't that correct? Yes, Your Honor. Okay. Now, which applies to your client? Which situation? Your Honor, we never had a chance to develop a record on what specific conditions of parole or the extent of it. Is he on an active or inactive parole at the moment? I believe at this point it's still active parole. Active parole. Yeah. But under the pre-'86 policy, he had an option for active or inactive, which is fundamentally the argument you make with respect to lack of mootness. I don't know that he would have had the option, unless I'm misunderstanding Your Honor's question, of selecting the inactive. No, no, that the board had that power. That they could have originally placed him on inactive? And there's a difference between active and inactive in terms of the custodial restraint, is there not? Oh, yes, yes. Active parole is definitely a greater restriction on a prisoner's freedom after they're released from prison. But as I referenced earlier in the Jago case, an Ohio prisoner, much like Mr. Green, challenged the rescission of parole while he was still incarcerated. As the case was as unconstitutional under the due process clause, as the case entered the apparent phase, he was released from prison. The state of Ohio contended that his release rendered the case moot, and the Sixth Circuit rejected that. The United States Supreme Court affirmed the Sixth Circuit, finding that there were significant restrictions on a prisoner's freedom when they are released, and that the flexible nature of habeas corpus enables the district court to fashion a form of release, a relief, excuse me. And the relief that it referenced in that case was an acceleration of the parole termination date. Maybe that will help focus, I think, the question Judge Escanla and I were both driving at. If he is on inactive parole status, are there any restrictions on him anymore? There are restrictions in terms of Let me ask it this way. If he were on inactive release at this point, inactive parole, would you argue that it's still not moot? I would definitely argue that it's still not moot, because the relief would be to accelerate the maximum custody date or the end of that inactive parole, and thus he would be entitled to the discharge of the entire term of his supervision. So in either case, the case would not be moot. It's a stronger case for lack of mootness when the person is on active supervision, because the dimension of the restrictions is so much greater. But still, there are restrictions on someone's freedom when they are on inactive supervision and do not become entirely free until they are completely discharged from the supervision status. Well, in which case, we have to get to the exhaustion issue. What's your comment on exhaustion? I submit that the unique situation that the Oregon Court of Appeals found itself in, in terms of the briefing in this case, also dictates a finding of exhaustion. The Supreme Court, in the Baldwin v. Reese decision, said that ordinarily in order to exhaust or fairly present its federal claims to the state appellate courts, the petitioner must reference the federal constitution within the actual brief itself. And although Mr. Green did not do that at the appellate phase, the kind of brief that was filed here would have alerted sufficiently the Oregon Court of Appeals and the Supreme Court that there was a federal due process and ex postacto issue. Relying on what? The sheer brevity of the brief, Your Honors, was in the Balfour brief, the counsel says, in his opinion, the case has no merit. But here's the excerpt of records from the court below. And this is what Mr. Green suggested. An answer to tell the Court of Appeals that there's a constitutional issue here? Well, what the court was concerned about in both Baldwin and this court in Castillo v. McFadden was that the court would have to search through the record to figure out, you know, what's the petitioner actually raising. And that's the rationale for the policy. And if there is simply no reference whatsoever to the United States Constitution, let alone a particular constitutional argument, doesn't that pretty much negate Baldwin and Castillo both? If it were not for the fact that this was a Balfour brief or a state equivalent of an Andrews brief, there would be a problem and perhaps lack of exhaustion. But what the court must do when it's handed that brief, and I think we can envision how the appellate judges went about their task here, is it had to have taken the brief, it sees that counsel is telling the judges that he or she thinks that the case has no merit at all, but here's what the petitioner raised. And the court would have then turned to the few pages of the excerpt of the record where those claims are summarized. If the court did not do that, there is no judicial function other than to simply pick up the brief and say counsel doesn't think it doesn't have any merit, so I'm going to put it down. And I suggest that the court would not see its task as so curtailed and so limited. When did you step into the picture? I'm sorry? When did you enter the litigation? At the federal agency, the district court level. And what about the mootness argument there? Mr. Greener was not released on parole until after the case entered the appellate phase. Did you argue against mootness? In our brief, we definitely argued against mootness. You argued against it? Yes. Same argument you're making now? Same argument. And what did the district court judge say? He was actually in custody at the district court phase, and the district court found that it was not fairly presented and had been procedurally defaulted. And the release after the district court judgment has given rise to the contested issue of mootness. The district court did not decide the mootness issue? Right. Only the other issue? Yes. All right. Counsel, you may reserve the rest of your time. Thank you. We'll hear from the warden. Why do you want us to decide the mootness issue? Pardon me, Your Honor? Why do you want us to decide the mootness issue when the district court judge didn't? Because the petitioner was released. He didn't say yes or no. So what basis does that come from? Your Honor, it wasn't moot in the district court. What's that? It was not moot in the district court. The petitioner was released after the district court issued its opinion. Therefore, it became moot on appeal after he was paroled. So the district court decided the procedural default issue, found his claims were defaulted, but didn't have a chance to decide mootness because it wasn't moot at that point. It became moot on appeal. And mootness can be raised at any time during the proceedings. Counsel, for the record, would you please identify yourself? May it please the Court, Carolyn Alexander for Respondent James Bartlett. Any further question on that issue, Your Honor? That's fine. Okay. On mootness, do you know what his status on parole is? He's still currently on parole, Your Honor. And is it active? Yes, I believe it still is active supervision, yes. And on that issue, I'd like to – oh, yes, Your Honor. Well, to the extent he might have possibly been eligible for inactive parole, doesn't that defeat your mootness argument? Not at all, Your Honor. Why? Under Spencer v. Chemna, a petitioner in his situation must show collateral consequences. And Spencer specifically says any decision that's discretionary or speculative can't demonstrate collateral consequences. A decision by the parole board to change an inmate from active to inactive supervision is completely discretionary. It's based on – That may be, but still, he can – I mean, if he should not be subject anymore to the parole board authority because he was denied a longer time, why shouldn't – there's no relief that we can give him? Is that the argument? That's the argument, Your Honor. He makes two arguments. First of all, there is a remedy, this court confession. The remedy, the petitioner says this court confession is shorten his sentence for the time he was illegally – Well, we can't do that because there's no attack on – but what about his – Absolutely. But if he should have been paroled earlier, is there no relief within the ambit of the parole term that he would be entitled to? No, Your Honor. And it's because of the unique sentencing structure that he finds himself subjected to. Well, let me – I'm sorry. Now I'm remembering the predicate I left out. If the board was restricted to keeping him on active parole to three years under the statute in effect at the time his crime was committed, then wouldn't we be able to say he must be taken off active and put on to inactive parole? That stems from an incorrect assumption, Your Honor. Parole – active – an active period of parole, 36 months, does not automatically terminate. It's a discretionary call by the board. Has that always been the case? Pardon me? Has that always been the case? That has always been the case. And I'd refer the court to Barnes v. Thompson that's cited in the red brief, and it's explained there. That, in fact, the board has to make an affirmative decision to switch from active to inactive supervision based on the parole officer's recommendation. It's always been a discretionary decision by the board. So under Barnes, under state law, and under the way the indeterminate sentencing scheme and parole work under Oregon law, this court or any court can't order the board to put an inmate on inactive supervision. As I understand it, then, you might even concede that there are collateral consequence differences between active and inactive, but we don't get there because the decision is exclusively discretionary in the board. Correct. And that's what the Oregon Court of Appeals determined in Barnes. Now, it's a different situation for inmates that are on post-prison supervision. Under that sentencing scheme, those periods of supervision do automatically terminate. But that's not the case for Petitioner here. Do you recognize the case of Green v. Baldwin? I'm sorry. We should have, or I should have indicated that in advance. Yeah. I'm sorry, Your Honor. I don't either. I think the controlling opinions and one opinion that's not cited is Beatty v. Slater that explains the post-prison supervision system. Barnes, on the other hand, that is cited in the red brief, talks about the parole indeterminate sentencing scheme. And there's a difference between those two as it pertains to mootness and as it pertains to discretionary decisions by the board. I would like to, before it escapes me, correct two errors in the red brief that I think are confusing. On page 3, Petitioner's maximum sentence date, September 22, 2008, is correct, but it's an incorrect citation to the record. It should be excerpt of record 27, not 69, midway down the page. And on page 22, about two-thirds of the way down, my sentence is incorrect where it begins, thus Petitioner did not assign error to the state habeas court's conclusion that the parole board, the sentence should read, had the statutory authority to deny his re-release on parole and did not violate his due process rights. Counsel, that's a significant change. If you wouldn't mind submitting a paper to the court pointing that out. I certainly will, Your Honor. Thank you. Does the Attorney General of California desire that this court micromanage parole conditions in the state of Oregon? I don't think so, Your Honor, if I understand your question. Well, when it comes to mootness, aren't we micromanaging the decisions of the parole board? I mean, that's what you want us to do. No. You would think that politically you would fight like the devil to prevent that. Well, I don't think that has anything to do with the parole board's decisions, Your Honor. I think mootness is a purely constitutional issue about whether this particular petitioner presents an active case. So we can micromanage the parole board then? Well, I think a finding that it was not moot because this court could change this petitioner from active to inactive supervision would be micromanaging the parole board. So we get involved all the way on whether or not it's active or inactive? Correct. Whether or not the conditions are too harsh? Well, because mootness is a constitutional issue. That's okay with you? Okay with the Attorney General of Oregon? No, Your Honor. What I'm saying is mootness is jurisdictional. Okay. I mean, that's purely the issue before this court at this time. If this court doesn't find it's moot because there's some remedy that can be fashioned for this petitioner, that could be problematic, I think. But even so, if this court were to find it wasn't moot, then we simply move on to the issue of procedural duty. I have a, coming back to the board's discretion, my understanding was that the board had discretion to impose a period of active supervised parole of either 6 to 12 months, and then that was extended or changed. Anyway, there was the extent, there was, enjoyed the discretion to extend active parole, but only up to a maximum of 36 months. And that's based on an administrative regulation in 1985 that said the board may order an extended supervision period after a hearing. If it finds that such an extension is mandated, that extended supervision shall in no case exceed 36 months. Are you, and if that applied to Green, would that not limit the length of time to which his active status on parole could have been extended? To be honest with Your Honor, I have not looked at that OAR to know if that in fact applies to Mr. Green. Well, then how could you tell me that there was no issue here based on the prior case? Because I believe that the parole board has the discretion in this case. But you're not familiar with this 1985 regulation? I am not, and I would have to look at that. And if that applied to Mr. Green? I don't know that it does apply to Mr. Green. But if it did, would that then undercut your mootness argument? I don't know, Your Honor. I have to look at those rules, and I'd have to look back at his crime and when that was committed and what rules apply to him. I can't say that without looking at, I don't even have a copy of the rule, I can't say that without looking at the rule and the rules that go with it as well as the statute, if in fact that does. Could I also ask you about the counsel's argument on the failure to exhaust? He makes the point that when we're dealing with an Anders-type brief, there is some obligation on the part of the court to review counsel's representation. Why doesn't his argument there have substance then, at least in the case of, I guess you'd call it a Balfour brief, but an Anders brief situation, why wouldn't the court have looked to the attachments, which are, I understand, required to be filed always, but in that case, why wouldn't that be a reason to look beyond just the mere allegations in the brief? Well, as an initial matter, I'm not sure he's raised that argument. But nonetheless, I see no difference in this situation than in Reese. In Reese, the U.S. Supreme Court said that the court has no obligation to hunt through a lower court opinion looking for claims. I understand that, but I'm talking about, we're talking about a brief that's been submitted by counsel saying, look, I'm representing to you as an officer of the court, there are no constitutional other claims here, nothing worth raising, and attached to the brief is what was presented below. Correct. What would the court normally do in the course of evaluating the merits of counsel's representation to discharge his or her function under the Anders kind of situation? The court very well may have a duty to look through the record in that situation. However, that says nothing about the petitioner's obligation to raise the federal claims he wishes to raise. Yes, but he's being represented by counsel who is taking a position that says he doesn't have a claim. Correct. And in the Valfour brief situation, and in particular in this, the record shows in this situation, counsel gave petitioner the opportunity to raise any claims he wanted to raise, and he declined to do so. So I don't think he can then fairly say that it's up to the Oregon Court of Appeals to search for any claim now that he wants to raise. Even though it would do so to make sure that counsel was fairly carrying out his or her obligation as counsel. Correct. But I think that that misses the point in that it doesn't discharge petitioner's obligation in federal habeas to have raised the federal claims he wishes to pursue. Because why do they even have an Anders brief, then, if they can say, well, your counsel is going to say you don't. So, therefore, unless you say there's then something he hasn't raised, we don't have to make any investigation into your carrying out your Anders responsibility. Well, I just see them as two separate issues. Well, I understand you do. I'm just trying to understand why. Because it's for exhaustion purposes in federal habeas, it's the petitioner's obligation to raise the claims he wishes to raise. And the fact that the court will look through the record looking for error doesn't discharge that obligation. And there's no supporting law in this circuit or in the U.S. Supreme Court that supports that, that that discharges his obligation. Thank you, counsel. Your time has expired. Thank you. Mr. Bornstein, you have a little time left. And may I suggest, in light of counsel's argument on the discretionary point, would you address that point? I was kind of with you during your argument, but then I'm not so sure where I am in the light of the discretionary argument. I think the flaw in the argument on this, especially that the board has a certain amount of discretion and that limits the habeas court's ability to fashion relief, is just simply incorrect. The federal court has the ability to craft a remedy if there has been an unconstitutional denial of a person's, prisoner's release from prison. It can fashion to its equitable power a remedy that takes into account the fact that the individual has been unconstitutionally deprived of their freedom for a set number of months, or in this case, assuming in favor of the petitioner on the claim, for years. Is the remedy of referring back to the parole board perhaps sufficient? Is that your argument? Because we can't require a non, what's it called, the difference between the two categories of parole, active and active. We can't require the imposition of inactive. The most we could do, I suppose, would be to send it back somehow to the board and let them take another look. Are you saying that's enough? I would say that this court, under the authority that we've cited in our brief, can engage in a step further, similar to what the court did in the Brown v. Palmatier case where it said the prisoner had been, denied his right under the ex post facto clause and he should have been released in 1996, eight years before the federal appellate court reviewed the case. And ultimately, the petitioner was released by order of the federal district court in that case. Similarly, this court can order the state of Oregon, through its parole board, to shorten the prisoner's maximum custody date. The authority that we've discussed on the equitable power and the remedial power of the federal court is directly on point. For instance, in one case we cited on page 10 of the brief, Fox v. Kelso, an 11th Circuit case, the challenge is to a misdemeanor guilty plea as unconstitutional under due process. The court finds that it's unconstitutional, but orders that could it be given against a non-challenged or an unchallenged felony sentence. So the court is crafting a remedy to cure the violation. There's an oft quoted precept in the desegregation cases where the Supreme Court stated the scope of the violation determines the scope of the remedy. And for the denial of Mr. Green's release back in 2000, he asserts that the court can fashion a remedy and should to shorten his maximum supervision date. Thank you, Your Honor. I'd be ready to move to the next case. Your time has expired on this case. The case just argued will be submitted for decision. And we will now hear argument in Meriwether v. Scheidler. And we have the same attorneys on both sides of this case. We can probably end on a very similar issue, so perhaps you can go right to the distinction between this case and the other one. Problematically for myself and the petitioner in this case, Your Honor, I learned late last week that Mr. Meriwether was revoked on parole after being released. And so this case is now squarely under the ruling and holding in this court's Burnett v. Lampert decision, in which the court found that the release on parole coupled with the subsequent revocation and reincarceration of the petitioner rendered the case moot. I have no ability at this point to distinguish that. I think it does. So you would concede that this case, unlike the other one, would be moot? I would concede that, yes, that there is no distinction between the Burnett case and in a case such as the Meriwether case or in this case in particular, it may be the subject for a more appropriate debunking, but I recognize that this panel cannot rule differently. And I'm not going to write it twice. Counsel, why don't we hear from the other side, and then we'll see if there's anything further to be done. Thank you, Your Honor. Thank you. Counsel for the State. Carolyn Alexander for Respondent. May it please the Court. The only thing that I would add is that I would ask this Court to take judicial notice of the revocation order in Mr. Meriwether's case, and I do have copies if the Court's interested in seeing that order. Would you please provide those copies after the argument to the Deputy Clerk? Yes, I will. And she'll get copies sent to the rest of us. I take it counsel has no objection? So unless the Court has further questions, I'll accept the petitioner's concession. That, in fact, Burnett controls. All right. Counsel, anything further? Mr. Bornstein, anything further? Nothing further on the Meriwether case. All right. The case just argued will be submitted for decision, and we will hear argument in the next case,
judges: Ferguson, O'scannlain, Fisher